IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FEDERAL INSURANCE COMPANY,** | : | No. 4:11-cv-02375 |
| Plaintiff | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| **GERALD A. SANDUSKY,** | : | |
| Defendant | : | |

### MEMORANDUM

Plaintiff Federal Insurance Company brought this civil action seeking a declaration of its obligations under an insurance policy issued to The Second Mile, a non-profit organization. (Doc. No. 1.) Currently pending before the Court is Plaintiff's motion for judgment on the pleadings. (Doc. No. 23.) In its motion, Plaintiff asks the Court to strike as against public policy any obligations it may owe to provide indemnity or defense costs to one Gerald A. Sandusky, an officer or agent of The Second Mile. The Court heard argument on the motion on May 22, 2012. The motion is now ripe, and for the reasons that follow, the Court will grant the motion in part and deny the motion in part.

**I.  BACKGROUND**

    **A.  The Insurance Policy**

On March 22, 2011, Federal contracted to insure The Second Mile and all of its directors and officers for the period of April 1, 2011, to April 1, 2012, on a "claims made" basis for both Directors & Officers Liability and Entity Liability Coverage Section ("D&O") and Employment Practices Liability Coverage Section ("EPL").

The D&O section provides that Federal shall indemnify any "Loss" which an Insured Person becomes obligated to pay for a wrongful act committed, attempted, or allegedly committed by an Insured Person. The EPL section provides that Federal shall pay "Loss on

account of any Third Party Claim," which includes amounts that an insured becomes obligated to pay for civil proceedings arising from "sexual harassment, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature against a Third Party." Under both the D&O and EPL coverage, Federal has included within the definition of "Loss" the costs of defending civil actions and criminal prosecutions.  The policy liability section of the policy includes a $1,000,000 liability limit for all claims under all liability sections of the policy for each policy year, exclusive of defense costs.  The parties agree that Defendant Sandusky, who has served in various roles for The Second Mile, facially meets the definition of an "Insured Person" under both the D&O and EPL sections of the insurance policy.

      **B.**      **The Sandusky Claim**

On November 5, 2011, Pennsylvania's Thirty-Third Statewide Investigating Grand Jury returned a report regarding an investigation of Defendant Sandusky.  The Grand Jury report identified eight minor male children whom Defendant Sandusky allegedly sexually abused.  As a result of the Grand Jury report, Defendant Sandusky has been charged with forty criminal counts, including but not limited to counts for involuntary deviate sexual intercourse, aggravated indecent assault, unlawful contact with a minor, endangering the welfare of a child, and corruption of minors.  Subsequently, the Grand Jury found that Defendant Sandusky engaged in unlawful acts with two additional male minors, and Defendant Sandusky was charged with twelve additional criminal counts of sexual abuse.  Defendant Sandusky denies the criminal allegations against him and maintains his innocence.

Defendant Sandusky has also been named as a defendant in a civil action filed in the Court of Common Pleas of Philadelphia, <u>John Doe A v. The Second Mile, Gerald Sandusky, and</u>

The Pennsylvania State University. In the civil action, John Doe A alleges that Defendant Sandusky sexually abused him over one hundred times and that he molested multiple other victims. Defendant Sandusky denies the allegations of the civil complaint.

On December 16, 2011, Defendant Sandusky informed Plaintiff that he is seeking coverage under the insurance policy for loss related to the civil complaint and the criminal charges under both the D&O and EPL sections of the policy. (See Doc. No. 32-3 at 2.) In response, on December 23, 2011, Plaintiff informed Defendant Sandusky that it would provide him with a defense in the civil and criminal matters, with a reservation of all rights available at law to deny coverage. (Id. at 9-10.) Thereafter, Federal advanced $125,000 to Sandusky's criminal defense attorney, subject to its reservation of rights.

    C.    **Plaintiff's Complaint and Motion**

On December 23, 2011, Federal brought this declaratory judgment action seeking a declaration that it is not required to provide insurance coverage to Defendant Sandusky with respect to the criminal charges and civil complaint against him. Federal alleges that no coverage is owed to Sandusky under the contract because Sandusky was not acting in an insured capacity as an employee or executive of The Second Mile, if and when he committed the alleged criminal acts, and because the exclusions contained in the D&O policy – for bodily injury and emotional distress, willful statutory violations, and sexual harassment of persons that are not insured – limit or exclude coverage. No discovery has occurred that would enable the Court to resolve these coverage issues. However, Federal suggests that the Court should decide Sandusky's rights under the insurance policy at this early stage, without the benefit of a factual record. Federal urges the Court to set aside the outstanding issues regarding coverage and decide Sandusky's

right to coverage purely on public policy grounds.

Plaintiff argues that were The Second Mile's insurance policy ultimately interpreted to cover losses stemming from the allegations of sexual abuse and molestation of minors, the insurance policy would be void as against Pennsylvania's public policy. Therefore, Plaintiff argues that it should not be required to defend or indemnify against damages arising out of these claims against Defendant Sandusky. Defendant Sandusky opposes Plaintiff's motion. (Doc. No. 30.)

## II.   STANDARD OF REVIEW

Any time after the pleadings close and so as not to delay trial, a party may move for a judgment on the pleadings. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings will not be granted unless the moving party clearly establishes that there are no material issues of fact, and he or she is entitled to judgment as a matter of law. DiCarlo v. St. Mary Hosp., 530 F.3d 255, 259 (3d Cir. 2008). In reviewing a motion for judgment on the pleadings, a court must accept the nonmovant's allegations as true and view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005).

## III.   DISCUSSION

In this case, Rule 12 requires the Court to adopt as true, for purposes of this motion, all of Sandusky's factual representations. In his answer, Sandusky admits that he was employed by The Second Mile during the period of time covered by the policy. However, he denies engaging in the reprehensible acts against children of which he stands accused, and he denies that his conduct is not covered by the policy under any exclusion. In the normal course, these factual

disputes are questions for the jury.

The unique posture of the case requires the Court, at this juncture, to adopt Sandusky's assertions, which he argues entitle him to the insurance coverage that The Second Mile bargained for. It is against this backdrop that Federal asks this Court for a declaration that, notwithstanding Sandusky's version of the events, public policy in Pennsylvania, as established by its highest court, would bar recovery under the insurance policy in any event. To address the question, the Court necessarily looks to the Pennsylvania courts.

"The law has a long history of recognizing the general rule that certain contracts, though properly entered into in all other respects, will not be enforced fully, if found to be contrary to public policy." 15 Corbin on Contracts § 79.1 (rev. ed. 2003) (collecting cases). However, "the power of courts to formulate pronouncements of public policy is sharply restricted; otherwise they would become judicial legislatures rather than instrumentalities for the interpretation of law." Mamlin v. Genoe, 17 A.2d 407, 409 (Pa. 1941). In Mamlin, the Supreme Court of Pennsylvania explained the circumstances in which courts may invalidate contracts on the basis of public policy:

> The right of a court to declare what is or is not in accord with public policy does not extend to specific economic or social problems which are controversial in nature and capable of solution only as the result of a study of various factors and conditions. It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal.

Id. The court went on to explain that "[o]nly in the clearest of cases . . . may a court make an

alleged public policy the basis of judicial decision." Id.

Sexual abuse and molestation of children are "so obviously . . . against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it." See Mamlin, 17 A.2d at 409. Accordingly, Pennsylvania's legislature and judiciary have repeatedly expressed a strong public policy of protecting children from abuse and molestation. Pennsylvania's legislature has enacted several criminal laws against abuse, endangerment, corruption, and sexual contact with minors. See, e.g., 18 Pa. Cons. Stat. §§ 3123(b) (involuntary sexual deviate intercourse with a child), 3125 (aggravated indecent assault of a child), 4304 (endangering welfare of children), 6301(a)(1) (corruption of minors). Additionally, the legislature has enacted laws to encourage reporting of suspected child abuse and to require registration of convicted sex offenders. See, e.g., 23 Pa. Cons. Stat. §§ 6301-6385 (Child Protective Services Law); 42 Pa. Cons. Stat. §§ 9791-9799 (Megan's Law). Pennsylvania courts have also expressed their strong disapproval of sexual contact between an adult and a child by adopting the inferred intent rule for liability insurance cases involving the sexual abuse of a child by an insured adult. See Aetna Cas. & Sur. Co. v. Roe, 650 A.2d 94, 102 (Pa. Super. Ct. 1994) (citing Wiley v. State Farm Fire & Cas. Co., 995 F.2d 457, 464 (3d Cir. 1993) (concluding that the "harm to children in sexual molestation cases is inherent in the very act of sexual assault committed on a child, regardless of the motivation for or nature of such assault, and that the resulting injuries are, as a matter of law, intentional")).

The Pennsylvania Supreme Court has further held that public policy bars enforcement of insurance contracts that indemnify insured persons for damages arising from certain reprehensible conduct, stressing that "it would be against public policy of this Commonwealth to

permit a carrier to offer insurance for damages assessed as a result of evil or illegal conduct." Mut. Benefit Ins. Co. v. Haver, 725 A.2d 743, 747 (Pa. 1999) (stating in dicta that it would violate Pennsylvania's public policy to indemnify a pharmacist who repeatedly distributed drugs to individuals without prescriptions). The Pennsylvania Supreme Court has also held that public policy prohibits insurance coverage for damages arising from a "situation where an insured commits a criminal act, with respect to a Schedule I controlled substance." Minn. Fire & Cas. Co. v. Greenfield, 855 A.2d 854, 866 (Pa. 2004). Significantly, in a case with facts analogous to the instant matter, the United States District Court for the Eastern District of Pennsylvania held that the defined and dominant public policy of Pennsylvania bars "insuring against damages resulting from sexual contacts between a public school teacher and his student." Teti v. Huron Ins. Co., 914 F. Supp. 1132, 1141 (E.D. Pa. 1996). The court examined legislative enactments and judicial decisions that support the proposition that "a teacher's sexual molestation of a student could not possibly be deemed an acceptable practice." Id. at 1142 (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 727 (3d Cir. 1989)).

Pennsylvania's judicial and legislative pronouncements with respect to child abuse and molestation constitute a "positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal" that bars the enforcement of a contract that would indemnify the perpetrator of intentional sexual molestation of a minor for damages arising from that conduct. See Mamlin, 17 A.2d at 409. Such a contract would allow an insured to shift the consequences of intentional, reprehensible conduct to an insurance company, thereby abdicating personal responsibility. It is entirely clear, and this Court holds, that the public policy of Pennsylvania as

7

announced by its courts prohibits the reimbursement of Sandusky for any damage award that he may ultimately be found to owe arising from the allegations that he molested and sexually abused children.

What is not so clear, and must not be prejudged, is whether the same public policy bars coverage for The Second Mile for a judgment issued against that organization or any other principal of that organization in favor of a Sandusky victim.  This question is not now before the Court and is specifically reserved.  The Court's ruling does nothing to disadvantage the potential claim of any alleged victim of Sandusky as against The Second Mile or any other person not named here.  The Court writes only to address the legal duty owed to Sandusky.

Likewise, the Pennsylvania courts have not squarely addressed the remaining and most pressing issue before the Court: whether in light of the strong public policy against allowing a perpetrator to insure against the consequences of his own intentional wrongdoing, Federal's duty to provide Sandusky with a defense to a civil action or a criminal indictment is likewise unenforceable as against public policy because of the nature of the conduct alleged.  On this issue, the Court writes upon a blank slate.  The parties have cited no case and the Court's own research has discovered no case in which the Pennsylvania courts have evaluated any EPL or D&O policy that specifically provides coverage for defense costs, let alone one involving the most infamous of crimes.[1]

---

[1] The Court notes that the insurance policies issued to The Second Mile have the approval of the Pennsylvania Department of Insurance, which is charged with oversight of insurance matters generally, and is empowered to deny certain types of coverage that are ipso facto against the public interest.  See 40 P.S. § 477b ("It shall be unlawful for any insurance company . . . doing business in this Commonwealth, to issue, sell or dispose of any . . . contracts of insurance . . . until the forms of the same have been submitted to and formally approved by the Insurance Commissioner . . . ."); INA Life Ins. Co. v. Com., Ins. Dep't, 374 A.2d 670 (Pa. Commw. Ct.

As a general matter, in a civil suit, the duty to defend an insured arises only where the complaint contains allegations that are potentially covered by the insurance policy. See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 541 (Pa. 2010) ("An insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy."). Typical liability policies provide that the insurer has the right and duty to defend any suit seeking damages to which the insurance policy applies. See, e.g., Casper v. Am. Guar. & Liab. Ins. Co., 184 A.2d 247 (Pa. 1962) (holding that insurance company had no duty to defend where damages alleged in complaint were not potentially within the scope of the insurance policy and where the insurance policy provided for a duty to defend only against any suit alleging damages covered by the policy). However, where, as here, an insurance policy specifically includes defense costs as covered loss, separate and apart from damages, the mechanical process of determining whether there could be coverage for damages in order to determine whether there is a duty to defend cannot be applied. Furthermore, the general rule is not instructive where the policy provides for payment of criminal defense costs, and a judgment against a criminal defendant results in criminal penalties rather than liability for damages.

Although D&O policies that provide for defense costs in criminal cases are rare, it is possible to imagine valid public interest considerations that would favor the issuance of these policies. For example, it might be argued that such a policy enhances the ability of a non-profit organization to recruit volunteers and executives who might otherwise decline to serve because

---

1977) (affirming the Department of Insurance's rejection of a proposed insurance rider on public policy grounds).

of the fear of vexatious lawsuits or even criminal prosecutions.[2]  It might also be argued that the presumption of innocence that remains a bedrock principle of our Constitution makes insurance to cover defense costs in the public interest.  These considerations may inform the Court in predicting how the highest court of Pennsylvania would decide this matter, but they are not presented here for the Court's consideration.[3]

Because discovery has not commenced, the Court is also without facts specific to this case that may bear on the Court's public policy determination and may dictate the breadth of any rule that the Court may craft.  Was it Sandusky himself who procured this policy?  Did he do so knowing that criminal charges were imminent?[4]  Many other factual considerations may inform the Court's understanding of whether the contractual obligation of Federal to provide for defense costs is enforceable in whole or part, or entirely contrary to public policy and void ab initio.

Without the benefit of a factual record, it is not entirely clear that Pennsylvania's public policy would prohibit enforcement of the insurance policy to the extent that it provides Sandusky

---

[2] See Sean J. Griffith, Uncovering a Gatekeeper: Why the SEC Should Mandate Disclosure of Details Concerning Directors' and Officers' Liability Insurance Policies, 154 U. Pa. L. Rev. 1147, 1171 (2006) (noting that insurance policies that protect executives from potential personal liabilities may have an impact on the ability of some organizations to attract qualified individuals to serve as executives and officers).

[3] Because this case is before the Court on diversity jurisdiction, the public policy determination that Federal asks the Court to make is an unsettled issue of Pennsylvania's public policy.  "Although it is not directly applicable to this case, the Supreme Court's decision in R.R. Comm'n of Tex. v. Pullman, 213 U.S. 496, 85 L. Ed. 971, 61 S. Ct. 643 (1941), counsels against deciding unsettled issues of state law where it is not necessary to do so." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 413 (3d Cir. 2005).

[4] See Eisenman v. Hornberger, 264 A.2d 673, 675 (Pa. 1970) (declining to hold that an insurance policy would violate public policy to the extent that it indemnified a burglar for damages arising from an accidental fire in the home that he burglarized because, among other reasons, there was "no evidence whatsoever that the policy was procured [i]n contemplation of the crime").

with defense costs. Accordingly, the Court must defer issuance of a ruling on the public policy question as it relates to Federal's obligation to provide for Sandusky's legal costs to defend the civil action and criminal prosecution. See Mamlin, 17 A.2d at 409 ("Only in the clearest of cases . . . may a court make an alleged public policy the basis of judicial decision.").

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motion for judgment on the pleadings in part and will deny Plaintiff's motion in part. The Court will grant Plaintiff's motion to the extent that it seeks a declaration that Pennsylvania's public policy would not permit enforcement of the insurance policy that Plaintiff issued to The Second Mile to the extent that it provides for indemnification to Sandusky for civil liability for damages arising out of Defendant Sandusky's alleged molestation and sexual abuse of children. The Court must defer the question of whether any obligation Federal owes to Sandusky to provide a legal defense to the civil claims or criminal prosecution are void as against public policy in Pennsylvania.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FEDERAL INSURANCE COMPANY,** | : | No. 4:11-cv-02375 |
|     **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **GERALD A. SANDUSKY,** | : | |
|     **Defendant** | : | |

## ORDER

**AND NOW**, on this 4th day of June 2012, **IT IS HEREBY ORDERED THAT**

Plaintiff's motion for judgment on the pleadings (Doc. No. 23) is **GRANTED IN PART** and

**DENIED IN PART** as follows:

1. Plaintiff's motion is **GRANTED** to the extent that it seeks a declaration that Pennsylvania's public policy would not permit enforcement of the insurance policy that Plaintiff issued to The Second Mile to the extent that it provides for the indemnification of Defendant Sandusky for liability for damages arising out of Defendant Sandusky's alleged molestation and sexual abuse of children.

2. Plaintiff's motion is **DENIED** to the extent that it seeks a declaration that Pennsylvania's public policy would bar enforcement of the insurance policy to the extent that it requires Plaintiff to cover the defense costs associated with the civil complaint and criminal charges brought against Defendant Sandusky.

The Clerk of Court shall defer entering judgment until all claims have been adjudicated.

 s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania