IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, | : | No. 4:11-cv-02375 |
|     Plaintiff | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| GERALD A. SANDUSKY, | : | |
|     Defendant | : | |

# MEMORANDUM

Plaintiff Federal Insurance Company brought this civil action seeking a declaration that it has no obligation to provide insurance coverage to Defendant Gerald Sandusky for claims arising from the criminal and civil cases brought against him for sexual abuse and molestation of children. (Doc. No. 1.) Currently pending before the Court is Plaintiff's motion for summary judgment. (Doc. No. 51.) For the reasons that follow, the Court will grant the motion and enter judgment in favor of Plaintiff and against Defendant.

## I. BACKGROUND[1]

### A. The Second Mile

In 1977, Defendant Sandusky founded The Second Mile, Inc., a non-profit organization with the stated goal of providing services and support to the youth of Pennsylvania. (Doc. Nos. 53, 65-1 ¶ 5.) From 1977 until Defendant was criminally indicted for offenses against children, Defendant was associated with The Second Mile, at times as a volunteer, and at times as an

---

[1] Discovery has been stayed in this case; however, Plaintiff asserts that the record contains sufficient undisputed facts to warrant entry of summary judgment. Defendant Sandusky has requested an opportunity to conduct discovery. The following facts of record are undisputed, unless otherwise noted.

1

executive-level employee. (Id. ¶¶ 6-7.)

      **B.**      **The Insurance Policy**

On March 22, 2011, The Second Mile contracted with Federal to insure the entity and all of its directors and officers for the period of April 1, 2011, to April 1, 2012, on a "claims made" basis for both Directors & Officers Liability and Entity Liability Coverage Section ("D&O") and Employment Practices Liability Coverage Section ("EPL"). (See id. ¶¶ 20-21.)

The D&O section provides that Federal shall indemnify any "Loss" which an insured person becomes obligated to pay for a wrongful act committed, attempted, or allegedly committed by an insured person. (Doc. No. 1-4 at 19.) "Loss" is defined to include damages, judgments, settlements, interest, taxes, and defense costs. (Id.) Coverage is limited to "Wrongful Acts" committed by those acting in their "Insured Capacity," which means "the position or capacity of an Insured Person that causes him or her to meet the definition of Insured Person set forth in the applicable Coverage Section." (Id. at 4, 23.) Under the D&O section, the term "Insured Person" is defined as "any natural person who was, now is or shall be an Executive or Employee of any Organization." (Doc. No. 1-4 at 21.)

The EPL section provides that Federal shall pay "Loss on account of any Third Party Claim," which includes amounts that an insured becomes obligated to pay arising from "sexual harassment, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature against a Third Party, committed, attempted, or allegedly committed or attempted . . . by an Insured Person in his or her capacity as such." (Id. at 39, 43.) Under the EPL section, "Insured Person" is defined broadly to include any employee, volunteer, director, officer, trustee, committee member, or independent contractor of The Second Mile, "while acting

in his or her capacity as such." (Id. at 41.)

      **C.**     **Sandusky's Insurance Claim**

On November 5, 2011, Pennsylvania's Thirty-Third Statewide Investigating Grand Jury returned a report regarding an investigation of Defendant Sandusky, charging Defendant with multiple crimes related to the sexual abuse of eight minor male children. (Doc. Nos. 53, 65-1 ¶¶ 8-9; Doc. No. 1-2.) Subsequently, the Grand Jury found that Defendant Sandusky perpetrated unlawful acts against two additional male minors, and Defendant Sandusky was charged with twelve additional criminal counts of sexual abuse. (Doc. Nos. 53, 65-1 ¶11.) Defendant was found guilty by a jury of 45 criminal charges, including involuntary deviate sexual intercourse, indecent assault, criminal intent to commit indecent assault, unlawful contact with minors, corruption of minors, and endangering the welfare of children. (Id. ¶ 12.) Notwithstanding the guilty verdict, Defendant maintains his innocence and has appealed his criminal conviction. On October 9, 2012, Judge John Cleland of the Court of Common Pleas of Centre County sentenced Defendant to 30 to 60 years in prison. (Id. ¶ 14.)

Defendant Sandusky has also been named as a defendant in a civil action filed in the Court of Common Pleas of Philadelphia, John Doe A v. The Second Mile, Gerald Sandusky, and The Pennsylvania State University. (Id. ¶ 15.) In the civil action, John Doe A alleges that Defendant Sandusky sexually abused him over one hundred times and that Sandusky molested multiple other victims. (Id. ¶ 17.) Defendant Sandusky denies the allegations of the civil complaint.

On December 16, 2011, Defendant Sandusky informed Federal that he is seeking coverage under the insurance policy for loss related to the civil complaint and the criminal

charges under both the D&O and EPL sections of the insurance policy. (See Doc. No. 32-3 at 2.) In response, on December 23, 2011, Federal informed Defendant Sandusky that it would provide him with a defense in the civil and criminal matters, with a reservation of all rights available at law to deny coverage. (Id. at 9-10.) Thereafter, Federal advanced $125,000 to Sandusky's criminal defense attorney, subject to its reservation of rights.

### D. Plaintiff's Complaint and Motions

On December 23, 2011, Federal brought this declaratory judgment action seeking a declaration that it is not required to provide insurance coverage to Defendant Sandusky with respect to the criminal charges and civil claims against him. On March 15, 2012, Federal filed a motion for judgment on the pleadings, arguing that insurance coverage for the allegations against Defendant Sandusky would violate Pennsylvania's public policy. (Doc. No. 23.) The Court granted the motion in part, and denied the motion in part. (Doc. No. 41.) Specifically, the Court held that Pennsylvania's public policy would not permit enforcement of the insurance policy that Plaintiff issued to The Second Mile to the extent that it provides for indemnification of Sandusky for civil liability for damages arising out of his alleged molestation and sexual abuse of children, but deferred deciding the question of whether any obligation Federal owes to Sandusky to provide a legal defense to the civil claims or criminal prosecution are void as against public policy in Pennsylvania. (Id.) While it was clear that indemnification would violate public policy, this Court declined to decide the issue of whether insurance coverage for the legal costs of defending such allegations would also violate public policy. The Court did not consider the question of whether the insurance policy at issue actually covered Defendant Sandusky's defense costs, as Federal's motion for judgment on the pleadings related solely to its argument that any

4

coverage should be voided as against public policy.

Now, in its motion for summary judgment, Plaintiff seeks a declaration that it has no duty to provide any coverage to Defendant under the insurance policy because: (1) the criminal and civil lawsuits arising out of Defendant Sandusky's wrongful acts were not committed in Sandusky's "insured capacity;" (2) the doctrine of collateral estoppel precludes Defendant from denying the facts underlying his criminal conviction; and (3) Defendant's conduct is uninsurable as contrary to Pennsylvania's public policy. (Doc. Nos. 51, 52.) In response, Defendant argues that Plaintiff's motion for summary judgment is premature, and requests an opportunity to conduct discovery. (Doc. No. 65.)

## II. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an

5

absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III. DISCUSSION

Plaintiff argues that it has no duty to provide coverage to Defendant in the criminal and civil actions because: (1) the criminal and civil actions arise out of conduct by Defendant Sandusky in a personal rather than insured capacity; (2) Defendant is precluded from denying the facts underlying his criminal conviction, based on the doctrine of collateral estoppel; and (3) Defendant's conduct is uninsurable under the law of Pennsylvania. (Doc. No. 52.) The Court

6

will first address Plaintiff's insured capacity argument, and then address its public policy arguments.

A. **Insured Capacity**

First, Plaintiff argues that there is no coverage under the insurance policy, including no duty to defend Defendant Sandusky, because Sandusky was not acting in his insured capacity as an executive or employee of The Second Mile when he engaged in the wrongdoing now the subject of civil and criminal actions. (Doc. No. 52 at 5.)

The interpretation of an insurance contract is a question that is generally resolved by the court. Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290-91 (Pa. 2007) (citations omitted). Insurance policies are contracts, and the interpretation of insurance policies are governed by the rules of contract law. Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 540 (Pa. 2010). Where there is ambiguity in the policy, the ambiguity should be resolved in favor of the insured. Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 893 (Pa. 2006) (reasoning that because the contract's prime purpose is indemnification of the insured and because the insurer drafts the policy, ambiguity should be construed in favor of the insured). In a declaratory judgment action brought to determine an insurer's duty to defend and indemnify, "the allegations raised in the underlying complaint alone fix the insurer's duty to defend." Erie Ins. Exch. v. Claypoole, 673 A.2d 348, 355 (Pa. Super. Ct. 1996). Whether a claim is covered by the insurance policy is determined by comparing the four corners of the policy to the four corners of the underlying complaint. Baumhammers, 938 A.2d at 290.

Therefore, in order to determine whether Plaintiff must provide coverage for the criminal

and civil actions against Defendant Sandusky, the Court must compare the allegations of the complaints with the language of the insurance policy. First, in the D&O section, coverage for "Wrongful Acts" is limited to certain wrongful acts committed or attempted by an insured person in his or her "Insured Capacity," meaning "the position or capacity of an Insured Person that causes him or her to meet the definition of Insured Person set forth in the applicable Coverage Section." (Doc. No. 1-4 at 4.) "Insured Person" is defined in the D&O section as "any natural person who was, now is or shall become an Executive or Employee of [The Second Mile]." (Id. at 21.) Under the EPL section, coverage for wrongful acts against a third party is limited to acts committed or attempted "by an Insured Person in his or her capacity as such." (Id. at 43.) In that section, "Insured Person" is defined broadly to include any employee, volunteer, director, officer, trustee, committee member, or independent contractor "but only while acting in his or her capacity as such." (Id. at 41.)

While Defendant summarily argues that the language defining "Insured Capacity" is ambiguous, Defendant does not offer any support for such an argument.[2] The Court finds the policy language regarding "Insured Capacity" to be unambiguous in limiting coverage to those acts conducted by an Insured Person acting in his or her capacity as such. Capacity is not

---

[2] Contract ambiguity is an "intellectual uncertainty; . . . the condition of admitting of two or more meanings, of being understood in more than one way, or referring to two or more things at the same time." Int'l Union, UAW v. Mack Trucks, Inc., 917 F.2d 107, 111 (3d Cir.1990) (quoting Mellon Bank N.A. v. Aetna Bus. Credit, 619 F.2d 1001, 1011 (3d Cir.1980)). In determining whether a term is ambiguous, the Third Circuit has warned courts that "[t]he language of the policy may not be tortured . . . to create ambiguities where none exist." St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991) (quoting Pacific Indem. Co. v. Linn, 766 F.2d 754, 761 (3d Cir.1985)). The language defining "Insured Capacity" is not ambiguous because it is not subject to multiple interpretations. In the absence of ambiguity, the Court looks to the "plain and ordinary meaning" of the contract language. See Penn. Mfrs. Ass'n Ins. Co. v. Aetna Cas. & Sur. Ins. Co., 233 A.2d 548, 551 (Pa. 1967).

defined in the policy, but its ordinary meaning is the "role in which one performs an act." Black's Law Dictionary 235 (9th ed. 2009). Here, Plaintiff does not dispute that Defendant, as a former executive or employee of The Second Mile, facially meets the definition of an "Insured Person" under the D&O and EPL sections. (Doc. No. 52 at 6.) In order to determine whether the actions that form the basis of the claims against Defendant were performed in his capacity or role as an executive or employee of The Second Mile, the Court must refer only to the precise civil and criminal allegations made against Defendant. See Baumhammers, 938 A.2d at 290 (holding that the determination of whether a claim is covered by an insurance policy is determined by comparing the four corners of the policy to the four corners of the underlying complaint).

The report of the Thirty-Third Statewide Investigating Grand Jury describes Sandusky as the founder and primary fundraiser for The Second Mile, an organization whose stated mission is "to help children who need additional support and would benefit from positive human interaction." (Doc. No. 1-2 at 1.) The Grand Jury report details Defendant's acts of sexually abusing eight victims, many of whom he met through The Second Mile. The abuses detailed in the report occurred at various locations, including Defendant Sandusky's home, a high school, Defendant's car, Penn State football locker rooms, the Penn State campus, and hotel rooms. A second Grand Jury report, issued separately, details Defendant Sandusky's sexual abuse of a ninth and tenth victim. (Doc. No. 1-3.) The report indicates that Defendant met these two victims through The Second Mile; however, the sexual assaults described in the report occurred in the basement of Defendant Sandusky's home, at a hotel, in Defendant's car, and on the Penn State campus.

9

The complaint in <u>John Doe A v. The Second Mile, Gerald Sandusky, and The Pennsylvania State University</u>, describes Sandusky as "the founder of, and principal in" The Second Mile, and its primary fundraiser. (Doc. No. 1-5 at 4-5.) The complaint alleges that Defendant met Doe while he was a participant in programs sponsored by The Second Mile, and that Defendant sexually abused Doe over one hundred times. (<u>Id.</u> at 5-6.) According to the complaint, these abuses occurred in the facilities of Penn State, including the football locker room, within Philadelphia County, at out-of-state facilities connected with a Penn State bowl game, and at the Sandusky home. The complaint alleges that Sandusky "molested multiple victims through his activities with Second Mile and Penn State, dating back to the 1970's," and that some of the sexual abuse occurred "during the course of activities of Second Mile." (<u>Id.</u> at 6, 12, 15.)

From a comparison of these allegations to the four corners of the insurance policy, it is clear that Defendant Sandusky was not acting in his capacity as an employee or executive of The Second Mile in sexually abusing and molesting the victims named in the criminal and civil cases brought against him, and the Court so finds. While the plain language of the insurance policy dictates this conclusion, the Court will briefly discuss the cases cited by the parties in support of their respective positions.

In support of its argument that Defendant was not acting in his insured capacity, Plaintiff refers to a number of cases analyzing whether employees' acts were committed within the scope of their employment. (Doc. No. 52 at 5-10.) First, Plaintiff refers to <u>Plavi v. Nemacolin Voluntary Fire Department</u>, 618 A.2d 1054 (Pa. Commw. Ct. 1992), in which the Pennsylvania Commonwealth Court found that a firefighter's act of molesting a minor "was so outrageous, so

10

criminal, and so incapable of anticipation by his employer that it must be held, as a matter of law, to have exceeded the scope of his employment." Id. at 1055. The Plavi court referred to the following test used for determining the scope of employment for the purpose of governmental immunity:

> Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another, it is not unexpected by the employer.

Id. (quoting Natt v. Labar, 543 A.2d 223, 225 (Pa. Commw. Ct. 1988)). While this test refers to a distinct legal issue involving governmental immunity, the Court finds the test to be instructive to the analogous determination of whether Defendant acted in his capacity as an employee or executive of The Second Mile.

Plaintiff also relies on Sanchez by Rivera v. Montanez, 645 A.2d 383 (Pa. Commw. Ct. 1994), in which the Commonwealth Court relied on Plavi in holding that an employee's actions of molesting a child "were conducted for personal reasons only and were utterly outrageous in manner," such that the acts were outside the scope of his employment at a day care center. Id. at 391. In holding that the employee's conduct was not within the scope of his employment and that the employer was not vicariously liable, the Commonwealth Court reasoned that when "an assault is committed for personal reasons or in an outrageous manner, it is not actuated by an intent of performing the business of the employer and is not done within the scope of employment." Id. (quoting Fitzgerald v. McCutcheon, 410 A.2d 1270, 1272 (Pa. Super. Ct. 1979)).

Defendant urges the Court to disregard these cases, arguing that Plaintiff conflates the

11

legal determination of whether an employee's conduct is within the scope of his or her employment with the separate issue of whether an insured person is acting in his or her capacity as such. Instead, Defendant refers to a case in which a judge in this district held that two officers and directors of one entity were acting in their capacity as officers and directors of another, uninsured, entity when they engaged in a check-kiting scheme. (Id. at 19 (citing Cont'l Cas. Co. v. Adams, No. 3:02-cv-1122, 2003 WL 22162379 (M.D. Pa. Sept. 12, 2003)).) In Adams, the court considered whether an "Outside Directorship" exclusion applied in the context of a check-kiting scheme in which directors and officers of the insured company floated checks to another, uninsured, company of which they were also directors and officers. 2003 WL 22162379, at *5. Specifically, the exclusion provided that the insurance company would not be liable for any "claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged conduct by the individual insureds in the discharge of their duties as directors, officers, trustees, employees or volunteers of any entity other than the entity or charitable organization." Id. at *7. Considering the language in the policy, the court held that the actions of the officers and directors in conducting a check-kiting scheme in their capacities as directors and officers of the insured entity were "inextricably intertwined" with their actions on behalf of another entity. Id. at *10.

   Applying the facts set forth in the criminal and civil claims against Defendant Sandusky to the language of the insurance policy leads to the clear conclusion that Defendant Sandusky's offenses against children – whether proven or merely alleged – were not conducted in his capacity as an employee or executive of The Second Mile. While the John Doe A complaint references sexual molestation "during the course of activities of Second Mile," the acts of sexual

12

abuse and molestation detailed in both the civil complaint and the Grand Jury report cannot be said to have been in Sandusky's capacity as an executive or employee of The Second Mile. Defendant did not engage in this wrongful conduct in furtherance of his duties for The Second Mile. The fact that Sandusky met his victims through The Second Mile – or even sexually abused victims "during the course of activities of Second Mile" – does not change the fact that his sexual abuse of children was personal in nature, and performed in his individual capacity. While the legal issues in the cases cited by both parties are distinct from the issues now before the Court, application of these persuasive sources of authority serves only to strengthen the Court's determination that there is no coverage for Defendant Sandusky's offenses against children. Like the conduct at issue in <u>Pavi</u> and <u>Sanchez</u>, there is nothing in the record in this case to support the notion that Defendant's sexual abuse of minors was actuated by a purpose to serve The Second Mile. Moreover, unlike the conduct in <u>Adams</u>, the conduct at issue here is not alleged to be "inextricably intertwined" with Defendant Sandusky's role as an executive or employee of The Second Mile. <u>See</u> <u>Doe v. N. River. Ins. Co.</u>, 719 F. Supp. 2d 1352, 1360 (M.D. Fla. 2010) (holding that a sex crimes detective's act of molesting a child was not conducted in the scope of his employment and thus not in his "insured capacity," even where the police officer had a history of sex abuse and molested the victim in his police cruiser while in his uniform).

Defendant also argues that Plaintiff's "insured capacity" argument renders the insurance policy's provision of criminal defense costs through a final and non-appealable judgment illusory, because no criminal conduct is within the scope of any legitimate job description. (Doc. No. 65 at 15-16.) This Court need not reach the question of whether some conduct, although criminal, may be performed by an insured person in furtherance of his or her duties to an insured

13

entity, and thus entitled to coverage under the criminal defense provision. In this case, because Defendant Sandusky's conduct was clearly personal in nature and not in furtherance of his duties for The Second Mile, he is owed no criminal defense under the policy.

The Court will grant Plaintiff's motion for summary judgment to the extent that Plaintiff seeks a declaration that the claims against Defendant Sandusky are not covered by the insurance policy because the acts alleged therein cannot be said to have been in Defendant Sandusky's capacity as an employee or executive of The Second Mile.

### B. Collateral Estoppel and Public Policy

Next, Plaintiff argues that Defendant is collaterally estopped from denying the conduct underlying his criminal conviction, and thus any duty that it may have owed to Defendant has extinguished. (Doc. No. 52 at 10.) Plaintiff argues that the criminal conviction makes the continued provision of defense costs in his criminal case uninsurable as a violation of Pennsylvania's public policy. (Id. at 11-14.) Because the Court has determined that there is no coverage for the criminal and civil claims against Defendant Sandusky, see Part III.A, the Court need not reach the question of whether coverage should be disallowed on public policy grounds.

### C. Defendant's Discovery Request

In his opposition to Plaintiff's summary judgment motion, Defendant argues that summary judgment is premature and urges the Court to permit him to gather facts in discovery in opposition to Plaintiff's motion. (Doc. No. 65 at 23-28.) In support of his argument, Defendant presented a Rule 56(d) declaration setting forth the discovery that he believes is necessary to the Court's determination.[3] (Doc. No. 65-2.) In his Rule 56(d) declaration, Defendant states that he

---

[3] If a party believes that a summary judgment motion is premature and more discovery is necessary, Rule 56(d) allows a party to file an affidavit "setting forth why the time is needed."

is seeking discovery to show that Plaintiff intended for the policy to provide defense coverage for litigation including sexual misconduct, and that Defendant "is receiving disparate treatment vis-à-vis other policyholders based upon the high profile nature of his case." (Id. ¶ 4.) The discovery that Defendant asks the Court to permit includes: (1) language that Plaintiff has used in other policies to exclude sexual abuse and molestation from coverage; (2) information about Plaintiff's representations to the Pennsylvania Department of Insurance; (3) Plaintiff's claims and underwriting manuals related to the insurance policy at issue; (4) Plaintiff's underwriting and claims files for the policy; (5) information about Plaintiff's marketing and sales practices related to the policy; and (6) Plaintiff's claims and underwriting files for other insureds who have submitted similar claims.

Even if Defendant's inquiries are resolved in his favor, permitting discovery will not alter the Court's conclusion that the Federal policy does not cover the acts in question. Sandusky makes no argument that disputed facts – if resolved in his favor – would support a finding that his acts served his employer's purpose rather than his own. Instead, Sandusky argues that the discovery he requests might support his theory that Federal intended to provide coverage for claims related to sexual abuse and molestation. While this may be true, such extrinsic evidence of Plaintiff's intent is not admissible when the language of the policy at issue is clear and

---

Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 510-11 (3d Cir. 1994). "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protection of [Rule 56(d)] in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition." Radich v. Goode, 886 F.2d 1391, 1394 (3d Cir. 1989) (citations omitted). The decision of whether to grant a request for more discovery "depends, in part, on 'what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" Contractors Ass'n of E. Pa., Inc. v. City of Phila., 945 F.2d 1260, 1266 (3d Cir.1991) (quoting Lunderstadt v. Colafella, 885 F.2d 66, 71 (3d Cir.1989)). However, these factors are merely a guide to a district court in the exercise of its discretion. Id.

unambiguous. As discussed in Part III.A, the Court finds that the language of the insurance policy that Plaintiff issued to The Second Mile clearly and unambiguously limits coverage to those acts done by an "Insured Person" in his or her capacity as such. In an unambiguous, written contract, the intent of the parties is to be ascertained by the document itself, without inquiry into extrinsic evidence. Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 468 (Pa. 2006). Therefore, extrinsic information relevant to Plaintiff's intent is not material and cannot alter this Court's determination that the insurance policy does not provide coverage here. Accordingly, the Court will deny Defendant's Rule 56(d) request for more discovery.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant Plaintiff's summary judgment motion. Upon review of the criminal and civil complaints lodged against Defendant Sandusky, the Court is satisfied that the conduct at issue did not arise in Sandusky's capacity as an employee or executive of The Second Mile; therefore, the conduct at issue is beyond the scope of the insurance policy's coverage. Accordingly, the Court will declare that Plaintiff has no obligation to provide any coverage to Defendant related to the criminal case brought against him or to the John Doe A complaint. Because the insurance policy at issue does not provide coverage for Sandusky, the Court declines to expand its previous analysis of public policy to determine the discrete question of whether a D&O policy that provides coverage for legal costs associated with allegations related to infamous crimes violates the public policy of Pennsylvania as a matter of law. Moreover, because the information that Defendant seeks to discover is not material to the Court's determination, the Court will deny Defendant's Rule 56(d) request to conduct discovery.

An order consistent with this memorandum follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, | : | No. 4:11-cv-02375 |
|     Plaintiff | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| GERALD A. SANDUSKY, | : | |
|     Defendant | : | |

## ORDER

**AND NOW**, on this 1st day of March 2013, **IT IS HEREBY ORDERED THAT**

Defendant's request for discovery pursuant to Rule 56(d) (Doc. No. 65-2) is **DENIED**, and

Plaintiff's motion for summary judgment (Doc. No. 51) is **GRANTED** as follows:

1. Judgment is entered in favor of Plaintiff Federal Insurance Company and against Defendant Gerald A. Sandusky;

2. Plaintiff Federal Insurance Company has no obligation to provide any insurance coverage to Defendant Gerald A. Sandusky under the Forefront Portfolio For Not-for-Profit Organizations Policy, Policy No. 8165-3333, for the claims set forth in the two reports of the Thirty-Third Statewide Grand Jury, or for the claims set forth in the civil action filed against Defendant in the Court of Common Pleas of Philadelphia, John Doe A v. The Second Mile, Gerald Sandusky, and The Pennsylvania State University; and

3. The Clerk of Court is directed to close the case.

                                                     s/ Yvette Kane
                                                   Yvette Kane, Chief Judge
                                                   United States District Court
                                                   Middle District of Pennsylvania